[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, whose birth name was Hohm, was married to the defendant husband at Ft. Myers, Florida, on April 27, 1985. CT Page 9687
The husband has continuously resided in the State of Connecticut for at least one year prior to the commencement of the dissolution proceeding. One child was born to the wife, to wit: Juan-Carlos Nadal, II, born May 3, 1987. The child is issue of the marriage.
From the evidence presented, the court finds that the marriage has broken down irretrievably, there is no prospect of any reconciliation, and a decree of dissolution is hereby entered.
Both of the parties are thirty-six (36) years of age and in apparent good health.
The wife is a high school graduate and has taken some post high school courses. She is also a certified nurse's assistant although she presently works as a legal secretary.
The husband has a Medical Doctorate degree, although he is not a licensed medical physician. The major portion of his work history has been in medical research. His reported gross annual income at the time of trial was about $80,000.
The wife's testimony as to her relationship with John Cardinale leaves much to be desired. The telephone calls and her explanation of them, as well as her travel to Florida and her reasons for wanting to move to Florida, compels this court to find little credence to this testimony and to conclude that her behavior was the primary cause of the breakdown. The wife also has exhibited questionable judgment in allowing Mr. Cardinale to spend the night with her while her son was in her custody.
Also of concern to the court is the statement of the wife while being cross-examined by her husband's counsel. In response to a question concerning Mr. Cardinale, she responded, "The issue of my boy friend has nothing to do with him (husband)." This is a peculiar statement. It suggests to the court that a marriage relationship can be severed at any time and a new relationship with another can be taken up with the offended spouse having to accept the new arrangement without comment. It is indeed a sorry commentary on our family structure if this behavior were to become the norm.
Without going into detail as to the evidence, the court will merely state that the testimony of the father, as to his relationship and care of the minor child, is extremely impressive.
The court will not comment on the testimony of Dr. Mansbridge except CT Page 9688 to say that it provided the court with little, if any, help in its determination of this matter.
The court would be remiss if it did not comment on some of the testimony. It was suggested that perhaps "morality" is not a factor to be considered in determining the best interests of the child. This statement also appears to this court to be odd.
In bringing children into this world, they look to us for comfort and consistency and we disrupt this, not only with divorce, but also with relationships anathema to the marriage relationship and cavalierly adopt an attitude that "morality" is not germane or is a factor in determining the best interests of the child.
The family relations officer testified that the husband still harbors feelings of "anger and hostility." This is understandable to the court given the wife's extra marital behavior, although the husband should try to curb his anger and reach an accommodation with his wife now that the marriage has been dissolved.
The court, having considered all of the evidence and the provisions of Connecticut General Statutes, Sec. 46b-81, 46b-82 and 46b-84, further finds and orders as follows:
1. Custody of the minor child shall be joint, with physical custody with the father. All major decisions affecting the health, welfare and education of the child shall be made with the concurrence of both parties. Visitation by the mother shall be in accordance with the schedule attached herewith.
2. Wife shall pay to the father the sum of $70.00 per week as support for the minor child, which amount is substantially in compliance with the Connecticut Child Support Guidelines.
3. The husband shall maintain, if available through his employment, medical and dental insurance for the benefit of the minor child. All unreimbursed medical and dental shall be divided equally between the husband and the wife. These orders are entered pursuant to the provisions of 46b-84(c).
4. The defendant shall pay to the plaintiff the sum of $170 per week, which alimony shall cease upon the happening of the first of the following events: CT Page 9689
 a) eight (8) years from the date herein; b) death of either party; c) remarriage or cohabitation by the wife.
Alimony shall be nonmodifiable as to term.
5. The Consumer Credit Counseling bill shall be paid by the husband.
Except as indicated above, each of the parties shall be responsible for his or her own liabilities, attorney's fees and costs.
6. The dependency exemption for the minor child shall be alternated with the wife entitled to the 1994 tax year exemption.
7. The husband shall pay 65 percent of the bill for the attorney for the minor child and the wife shall pay 35 percent.
8. The plaintiff shall name the child as irrevocable beneficiary on his presently existing life insurance policy until the child reaches his majority or is earlier emancipated.
9. The husband shall pay any outstanding bill of Dr. Douglass.
10. COBRA benefits will be made available to the wife at her own expense.
11. The Honda shall be the exclusive property of the wife and the Nissan shall be the husband's property.
12. Should the wife locate the following items of personal property, she will deliver same to the husband, forthwith:
 a) his wedding ring and caduceus ring; b) the freezer; c) the refrigerator given to the parties by the husband's parents.
Mihalakos, J.
VISITATION
1.1 The Wife shall have reasonable, liberal, and flexible rights of visitation as follows:
a. weekends in accordance with a 4 week cycle; CT Page 9690
 i. first weekend from Friday after school until Sunday at 7:00 p.m. (Monday if a legal holiday);
 ii. second weekend on Friday after school until Saturday 6:00 p.m.;
 iii. third weekend from Friday after school until Sunday at 7:00 p.m. (Monday if a legal holiday);
iv. fourth weekend no visitation;
 v. the exchange of the child for visitation on the first and second weekends shall be accomplished in the City of Waterbury.
 b. two dinner visits per week from after school until 7:00 p.m.;
c. alternate spring and winter school vacations;
 d. each party shall have four (4) weeks of uninterrupted (not more than two (2) weeks consecutive) vacation with the child regardless of the weekend schedule upon thirty (30) days written notice of the weeks intended (first choice to the wife);
 e. Christmas Eve from 9:00 a.m. until 11:00 a.m. Christmas Day shall be alternated in even numbered years to the wife;
 f. Christmas Day and Night from 11:00 a.m. to December 26 at 11:00 a.m. shall be alternated in even numbered years to the husband;
 g. the Christmas week vacation shall be shared with the first half until December 28 at 7:00 p.m. to the parent who has Christmas Day and the second half until New Years Day at 7:00 p.m. to the parent who has Christmas Eve;
 h. the parties shall share Easter Sunday regardless of the weekend schedule with the first half of the day until 4:00 p.m. to the wife and the balance of the day with the husband; CT Page 9691
 i. the parties shall alternate the Thanksgiving holiday from Wednesday at 5:00 p.m. to Sunday at 6:00 p.m. in even numbered years to the husband;
 j. Mother's Day shall always belong to the wife and Father's Day to the husband regardless of the weekend schedule;
 k. such other visitation as the parties may from time to time agree upon.
1.2 Each of the parties agrees to keep the other reasonably informed of the whereabouts of the child while said child is with the Husband or with the Wife, and agrees that if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said child, the Husband or the Wife, as the case may be, will promptly notify the other. For the purposes of this paragraph, the word "illness" shall mean any sickness or ailment which requires the services of a physician. The word "injury" shall mean any injury which requires the services of a physician. During any illness or accident, the Husband shall have the right of reasonable visitation to see the child in addition to the other rights provided herein.
1.3 Each of the parties will furnish the other copies of any reports from third persons or institutions concerning health, education, or welfare of the child.
1.4 The parties shall exert every reasonable effort to maintain free access and unhampered contact between said child and each of the parties and to foster a feeling of affection between said child and the parties hereto. Neither party shall do anything which may estrange said child from the other party or injure the opinion of said child as to their mother or father, or act in such a way as to hamper the free and natural development of said child's love and respect for the other party.
1.5 The parties shall have reasonable access to the child while he is with the other party, including free access by mail and free access by telephone during reasonable hours of the day and evening. Any long distance telephone calls made by the child to the Husband shall be the Husband's sole responsibility. CT Page 9692 Such calls should be on a "call collect" basis. If such a call is billed to the Wife, the Husband shall promptly reimburse her.
1.6 The Husband and the Wife shall communicate directly, and not through the child, in making mutually satisfactory plans respecting all periods of visitation. The child shall be consulted, however, by either or both of the parties either before or after the making of arrangements between the parents. In the event that there should be a change in the plans of the parent exercising rights of visitation, he or she shall promptly notify the other of such change to the extent that the same shall cancel, interrupt, or interfere with the arrangements which shall then have been made with respect to that period of visitation.
1.7 In the event of the death or permanent disability of either party, the surviving party shall assume the entire custody of the child and shall be sole guardian of his person and property. Neither party shall make any provisions by will inconsistent with this paragraph.
1.8 Both parties agree that the child shall not be exposed to any regular cohabitation with persons of the opposite sex.
1.9 The parties agree as to any dispute arising between them out of this Article, that they will first attempt to resolve the problems themselves, and, where necessary, amend the Agreement in writing signed by both of them. If they are unable to resolve their problems as to the custody of the child or any other issue concerning the child after using their best efforts, the matter shall be referred to the Family Services Unit of the Superior Court at Danbury for review by the Visitation-Custody Mediation Team then in existence. If the Mediation Team is unable to resolve the differences, either party may petition the Superior Court for a judicial determination of the issue.